IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| LARRY ALLEN SLEDGE, | ) | |
| | ) | |
| Plaintiff | ) | 1:21-CV-00348-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | CHIEF UNITED STATES |
| COUNSELOR HEATHER MARTIN, | ) | MAGISTRATE JUDGE |
| CORRECTIONAL OFFICER RYAN | ) | |
| TARASOVICH, LT. BEGANICS, | ) | MEMORANDUM OPINION ON |
| | ) | DEFENDANTS' MOTION TO DISMISS |
| Defendants | ) | AND PLAINTIFF'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| | ) | IN RE: ECF NOS. 22, 44 |
| | ) | |

Pending before the Court are Defendants' motion to dismiss Plaintiff's Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 22], and Plaintiff's motion for

summary judgment [ECF No. 44].    For the reasons discussed below, Defendants' motion will

be granted in part and denied in part, and Plaintiff's motion will be denied.[1]

I.      Procedural Background

Plaintiff Larry Allen Sledge ("Sledge"), an inmate presently in the custody of the

Pennsylvania Department of Corrections, brings this civil rights action against Lt. Beganics,

Officer Tarasovich, and Counselor Heather Martin ("Defendants"), three individuals employed at

the Erie County Prison ("ECP"), where Sledge was previously detained. *See* ECF No. 1.  In

response to Defendants' prior motion to dismiss his Complaint, Sledge filed a verified Amended

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), the Parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings. *See* ECF No. 3, 16.

Complaint [ECF No. 29], which is the operative pleading before the Court and the subject of Defendants' pending motion to dismiss. The Amended Complaint asserts that Lt. Beganics and Officer Tarasovich used excessive force against him during his detention in violation of his rights under the Fourteenth Amendment to the United States Constitution and that Counselor Heather Martin refused to provide him with a grievance form in violation of his First Amendment rights. Sledge seeks redress of these alleged violations pursuant to 42 U.S.C. § 1983.

Defendants seek dismissal of the claims against Beganics and Tarasovich on the grounds that the Amended Complaint fails to allege facts sufficient to state an excessive force claim and, alternatively, that Beganics and Tarasovich are entitled to qualified immunity. They argue that Sledge's claim against Martin fails as a matter of law because he has no "constitutionally protected right to a grievance process."[2] ECF No. 23, p. 19. Sledge's motion for summary judgment asserts that video evidence establishes that Beganics' use of force against him was excessive as a matter of law. ECF Nos. 44-46. Both motions are ripe for decision.

II.    Factual Allegations of the Amended Complaint

The Amended Complaint alleges the following facts, which are accepted as true for purposes of the Defendants' motion to dismiss. *See, Miller v. Victory* , 2022 WL 17128634 *2 (W.D. Pa. Nov. 22, 2022) (citation omitted). Sledge entered the ECP as a pretrial detainee on

---

[2] The Court denied Defendants' initial motion to dismiss without prejudice based upon Sledge's filing of his Amended Complaint. *See* ECF No. 32. In response to the Amended Complaint, the Defendants elected to stand on their previously filed motion to dismiss and its supporting materials. *See* ECF No. 37. Certain of the arguments raised by Defendants' motion have been rendered moot by the Amended Complaint. Specifically, Defendants' motion attacked the legal sufficiency of Sledge's equal protection and Fifth Amendment due process claims. Sledge's Amended Complaint omitted both claims. Sledge's original Complaint also named Captain Shawn Bolt as a defendant. Defendants moved to dismiss all claims against Bolt. In response to the motion, Sledge omitted all claims against Bolt from the Amended Complaint, and Bolt was terminated as a party on May 16, 2022.

January 4, 2020.[3]  *See* ECF No. 29, ¶¶ 3, 7.  Sledge alleges that he was subjected to two

instances of excessive force during his detention at ECP.  He alleges that the first occurred on

January 4, 2020, when Lt. Beganics, "without any verbal warning," sprayed him with oleoresin

capsicum spray, otherwise known as "OC spray" or "pepper spray," "during a verbal dispute."

ECF No. 29, ¶ 7.  Sledge alleges that, as a result of Lt. Beganics' actions, he has "suffered vision

issues and received optometrist treatment … as shown by video and exhibits presented by the

Defendants." *Id.*  The second incident occurred on April 7, 2020, while Sledge was returning to

the maximum-security pod and after he had engaged in "an altercation with an inmate Jermaine

Belgrave." *Id.*, ¶ 8.  "After the fight was over," according to the Amended Complaint, Sledge

"got into a crouching position and was proceeding to [his] knees when he was thrown backwards

on to his chest and injured his right arm (shoulder & elbow) from the slam by Officer

Tarasovich." *Id.*

Sledge's claim against Heather Martin is based on an exchange "during late April, 2020,

early May, 2020," when he "requested an inmate grievance from counselor Heather Martin for

the incident occurring on 4-07-2020, and was denied." *Id.*, ¶ 9.  Sledge asserts that Martin's

denial of the grievance form violated his First Amendment rights. *Id.*  ECF Nos. 44, 45, 46.

III.    Defendants' Motion to Dismiss

A.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When

---

[3] Sledge's original Complaint explained that he had been transported to the Erie County Prison on June 4, 2020,
pursuant to an indirect criminal contempt warrant issued for violation of a Protection from Abuse Order.  See ECF
No. 29, ¶ 8.

reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In deciding a motion to dismiss, the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must view the well-pleaded factual allegations in the complaint in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

4

Finally, because Sledge is proceeding pro se, the allegations of his Amended Complaint are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). *See also Switzer v. Franklin Investments Corp.*, 2023 WL 1072987 (W.D. Pa. Jan. 8, 2023).

B.    Scope of the Record

Defendants have attached numerous exhibits to their motion. These include affidavits, reports, and medical records. *See* ECF Nos. 22-2 through 22-11.[4] Separately, they have also submitted video recordings of the use of force incidents on September 4 and April 7, 2020, which are the subject of Sledge's claims against Beganics and Tarasovich. ECF No. 25; ECF No. 29. As a threshold issue, the Court must determine whether it can consider this evidence in deciding Defendants' motion to dismiss.

When ruling upon a motion to dismiss pursuant to Rule 12(b)(6), the court must "generally consider only the allegations in the complaint, exhibits attached to the complaint,

---

[4] Specifically, Defendants attach the following documents: an affidavit of Warden Gary Seymour (ECF No. 22-2); a commitment form dated 1/3/20 (ECF No. 22-3); an incident report dated 1/4/20 (ECF No. 22-4); Sledge's intake medical history (ECF No. 22-5); Sledge's misconduct report dated 1/4/20 (ECF No. 22-6); a commitment report dated 1/15/20 (ECF No. 22-7); medical chart notes (ECF No. 229-8); diagnostic medical report (ECF No. 22-9); a medical sick call log (ECF No. 22-10); and a release responsibility form (ECF No. 22-11).

matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). As this summary indicates, "the court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, such as a document that is integral to or explicitly relied upon in the complaint." *Jones v. Middletown Twp.*, 253 Fed. Appx. 184, 187 (3d Cir. 2007) (citing *In re Rockefeller Center Properties, Inc. Securities Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)). Such materials also include "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This is because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice … and has relied upon [those] documents in framing the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2004). (internal quotation marks, alteration, and citation omitted). Similarly, when deciding a motion to dismiss, the court may also consider an indisputably authentic video recording that has captured the conduct of the parties upon which the plaintiff bases his claims. *See e.g., Wade v. Colaner*, 2009 WL 1738490, at n.1 (D.N.J. June 17, 2009).[5] To qualify for such consideration, however, the document or video recording must be one "whose authenticity no party questions," that is "referred to in the plaintiff's complaint" and is "central to plaintiff's claim." *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 560 (3d Cir. 2002) (quoting 62 Fed. Proc., L.Ed.

---

[5] *Compare Broadwater v. Fow*, 945 F. Supp. 2d 574, 579 (M.D. Pa. 2013) (On defendant's motion to dismiss, "court did not consider a submitted video of the incident in question because it is extrinsic to the complaint."); *Torres v. Beverage*, 2017 WL 1058910, at n.1 (W.D. Pa. Mar. 21, 2017) (on a motion to dismiss, the court could not consider a "videotape of the subject incident" submitted by Defendants as an exhibit to their Brief that "present[ed] a version of events that differs significantly from that alleged by Plaintiff in his Complaint"; consideration of the video must await summary judgment stage of the case).

§ 62:508).  Where these requirements are not satisfied, the court may not consider "extraneous evidence submitted by the defense" when ruling on a motion to dismiss. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

Consideration of the video recordings of the two use of force incident is appropriate without converting the Defendants' motion to dismiss to one for summary judgment.  Sledge's excessive force claims are based entirely upon the events depicted in the video recordings, and Sledge relies on them in support of his claims. *See, e.g.*, ECF No. 29, ¶ 7 ("…as shown in the video … presented by the Defendants.") (Amended Complaint); ECF No 40, pp. 1-2 ("The video recording shows the following events: …"; "Beganics' report is totally contradicted by the video…") (response in opposition to motion to dismiss).  Sledge also bases his motion for summary judgment against Beganics exclusively on the video recording of the January 4, 2020 incident. *See* ECF Nos. 45-46.

The documentary evidence submitted by Defendants, however, will not be considered. None of the documents filed by Defendants is attached or specifically relied upon by Sledge in his Amended Complaint, and none can be considered indisputably authentic at this stage of the case.  To the extent Defendants' submission of these documents is an implicit request that the Court convert their motion to one for summary judgment, the Court declines to do so.[6]

---

[6] "The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond." *Pension Ben. Guar. Corp.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citation omitted).  A properly filed motion for summary judgment includes procedural safeguards to ensure that the party opposing the motion has a reasonable opportunity to respond to the moving party's assertions of fact. These include the requirement that the moving party file a concise statement of material facts with supporting evidence, in response to which the party opposing the motion files a responsive concise statement in which he admits or denies each such assertion of fact, states additional facts relevant to the matter, and provides evidence in support of his denials and additional facts. LCvR 56(B), (C); Fed. R. Civ. P. 56(c).

C.      Discussion

i    The Amended Complaint, considered in light of the video recordings, states an
     excessive force claim against Lt. Beganics, but not against Officer Tarasovich.

Sledge was a pretrial detainee at the time of the incidents at issue. *See* ECF No. 29, ¶ 7.

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of

excessive force. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  To state a claim under the

Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or

knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S.

389, 397 (2015); *see also Hunter v. Barrett*, 2022 WL 18358969, at *5 (W.D. Pa. Nov. 16,

2022), *report and recommendation adopted*, 2022 WL 17828970 (W.D. Pa. Dec. 21, 2022).

This includes a showing that the defendant's actions "were not rationally related to a legitimate

nonpunitive governmental purpose." *Kingsley*, 576 U.S. at 396-97.  "[O]bjective reasonableness

'turns on the facts and circumstances of each case.'"  *Id.* at 397 (quoting *Graham v. Connor*, 490

U.S. 386, 396 (1989)).  "A court must make this determination from the perspective of a

reasonable officer on the scene, including what the officer knew at the time, not with the 20/20

vision of hindsight." *Id.*  And it "must also account for the 'legitimate interests that stem from

[the government's] need to manage the facility in which the individual is detained,' appropriately

deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve

internal order and discipline and to maintain institutional security.'" *Id.* (alterations in original)

(citing *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).  A pretrial detainee asserting an excessive

force claim must, at minimum, allege facts and circumstances sufficient to allow the court to

determine whether the force in question was objectively reasonable. *See, e.g., Lombardo v. City*

*of St. Louis, Mo.*, —— U.S. ——, 141 S. Ct. 2239 (2021); *Hunter*, 2022 WL 18358969, at *5–6.

8

However, in cases such as this one, where the events upon which the plaintiff bases his claim were captured on a video recording that all parties agree is authentic and accurate, "the Court is obliged to consider that videotaped evidence... and must view the facts in the light depicted by the videotape." *Breeland v. Cook*, 2014 WL 820167, at *1 (M.D. Pa. Mar. 3, 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape."); *Tindell v. Beard*, 351 Fed. Appx. 591 (3d Cir.2009)).

    a.   Beganics' Use of Force

The use of force incident on January 4, 2020, which forms the basis for Sledge's claim against Beganics, was capture on Beganics' body camera. *See* ECF No. 25 (identified on the disc at "Exhibit F."). Sledge's Amended Complaint alleges that, "during a verbal dispute without any verbal warning from the Defendant," Beganics sprayed him with "OC spray[] (pepper spray)." ECF No 29, ¶ 7. The video of this incident largely confirms Sledge's assertions. The recording opens with Sledge being moved from one room to another (referred to as a "search room" in the video) where he was placed in small holding cell and instructed to change into a prison jumpsuit. *Id.*, at 19:33:01.[7] Sledge and Beganics, who is readily identified by his uniform's nameplate, are shown arguing. Sledge repeatedly asks for ibuprofen. *Id.*, at 19:34:30. Sledge tells Beganics and another officer that he has a "bad heart." *Id.*, at 19:34-38. He tells Beganics that he has not had his heart medication in 24 hours. *Id.*, at 19:35:16. Beganics exits the room and talks to another guard (Officer Bolt) about sending Sledge to "the

---

[7] Citations to this Exhibit refer to the time index stamp on the actual video, not as noted on the playback program.

hole." *Id.*, at 19:36:39-19:37:19.  Upon Beganics' return, he tells Sledge that he will be sending

Sledge to "the hole" because Sledge was threatening "lawsuits." *Id.*, at 19:37:19-32.  Beganics

then orders Sledge to disrobe and put on the prison-issued jumpsuit. *Id.*, at 19:37:55-57.   Sledge

tells Beganics that he "is trying to comply" and begins to remove his clothing. *Id.*, at 19:37:59.

Sledge notices Beganics reaching for his "mace." *Id.*, 19:38:01-19:38:14.  Sledge throws his

clothes out of the holding cell. *Id.*, at 19:38:18.  As Sledge is removing his undershirt in

compliance with Beganics' orders, Beganics says, "alright," and then sprays Sledge in the face

with the OC spray. *Id.*, 19:38:22-24.  Sledge, now in apparent distress, tells Beganics, "I have a

bad heart." *Id.*, at 19:38:30.  Beganics then tells Sledge that he was sprayed "for disobeying

orders." *Id.*, at 19:39:02.  Sledge complains that Beganics "sprayed me for nothing."  *Id.*, at

19:38:57.  Officer Bolt enters the room and instructs Sledge to "settle down." *Id.*, at 19:39:20.

Bolt then approaches the holding cell, removes his OC spray device and shakes it at Sledge. *Id.*,

at 19:39:40.  Sledge cowers and says, "don't spray me please." *Id.*, at 19:39:41.  Bolt does not

deploy the spray. *Id.*, at 19:39:46.

 The allegations in the Amended Complaint together with video recording plausibly

support inferences that Beganics purposely and knowingly used force against Sledge that was

"objectively unreasonable." *See Kingsley*, 576 U.S. at 397.  As the recording reflects, Sledge

was demanding ibuprofen for chest pain, and he became more agitated when Beganics

announced that he was going send Sledge to "the hole."  For his part, Beganics was accusing

Sledge of threatening to file lawsuits against him and telling Sledge to obey his commands.  But

at the time Beganics deployed the OC spray, Sledge was following his orders to disrobe and, as

the video records, was removing his undershirt. *See id.*, at. 19:38:22-24.  Based on the video, a

reasonable jury could conclude that Sledge was not posing an objective threat to prison security

or order.  Sledge was confined to a small, secure holding cell.  The video does not show Sledge

spitting at Beganics, throwing items at him, or otherwise engaging in conduct that presented a

threat to his health or safety.  Indeed, when ordered to keep his hands in the cage, Sledge

immediately complied.  *Id.*, at 19:38:26.  Beganics argues that the use of OC spray was necessary

because Sledge was "obdurate, argumentative, and threatening."  ECF No. 23, p. 11.  Sledge was

certainly argumentative, but the video recording also appears to show that he was compliant with

Beganics' instructions.  A jury could reasonably find that Beganics' use of OC spray against an

argumentative but otherwise complaint prisoner was objectively unreasonable.

Beganics argues that Sledge presented a threat to him based on the openings between the

bars of the cell that left Sledge with the ability to throw items or spit at him.  *Id.*  As the video

reflects, however, Sledge did not attempt or threaten to do either.  At this stage of the

proceedings, the Court must accept Sledge's version of the facts as true unless the video plainly

contradicts his version.  *Scott*, 550 U.S. at 380.  The video does not contradict Sledge's assertion

that Beganics utilized the OC spray while he was complying with Beganics' orders to disrobe

and presented no threat to Beganics or any other person.  Based upon this record, a jury could

reasonably find that Beganics had "no penological need" to resort to OC spray and that the force

he used was gratuitous and objectively unreasonable.  In addition, Sledge alleges that he suffered

damage to his vision and required the care of an optometrist following the OC spray incident.

Although thin, the current record supports a plausible inference that Beganics' use of OC spray

on Sledge caused him more than momentary discomfort or other *di minimis* harm.  *See Gibson v.*

*Flemming*, 837 Fed. Appx. 860, 862 (3d Cir. 2018) ("temporary discomfort" from OC spray did

not support a constitutional violation); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234,

1245 (11th Cir. 2003) (noting that "pepper spray ordinarily causes only temporary discomfort");

*Johnson v. Clarke*, 2022 WL 2835706, at *4 (W.D. Pa. June 2, 2022), *report and recommendation adopted*, 2022 WL 2834627 (W.D. Pa. July 20, 2022), *reconsideration denied*, 2022 WL 4094412 (W.D. Pa. Sept. 7, 2022) (noting that plaintiff "received prompt medical treatment following the incident and sustained no serious or lasting injuries from his brief exposure to pepper spray," which weighed in favor of summary judgment against plaintiff on his Eighth Amendment excessive force claim).

In the alternative Beganics argues that even if his use of OC spray against Sledge can be considered excessive, he is nevertheless entitled to qualified immunity. *See* ECF No. 23, pp. 17-19. Qualified immunity shields Beganics from suit unless he "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Thomas v. Tice*, 948 F.3d 133, 141 (3d Cir. 2020) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court has instructed that courts "must focus on whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original). Thus, "the central question is whether the existing law gave the officers "fair warning" that his *particular* conduct was unlawful." *Schneyder v. Smith*, 653 F.3d 313, 329 (3d Cir. 2011) (emphasis in original).

"For qualified-immunity purposes, 'clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *James v. New Jersey State Police*, 957 F.3d 165,

170 (3d Cir. 2020) (citing *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (citation

omitted); *Wesby*, 138 S. Ct. at 589-90 ("To be clearly established, a legal principle must ... [be]

dictated by controlling authority or a robust consensus of cases of persuasive authority[.]"

(citations and internal quotation marks omitted)). The Court is to "first look to factually

analogous precedents of the Supreme Court and the Third Circuit." *Id.* (citing *L.R. v. Sch. Dist.*

*of Phila.*, 836 F.3d 235, 247–48 (3d Cir. 2016). "Then, we examine persuasive authorities, such

as our nonprecedential opinions and decisions from other Courts of Appeals." *Id.*

     To assist courts in determining whether precedent involves conduct that is sufficiently

analogous to the facts at issue to negate qualified immunity, the Court of Appeals observed:

> Sometimes an officer can receive fair warning if a general
> constitutional rule already identified in the decisional law ...
> appl[ies] with obvious clarity to the specific conduct in question,
> even though 'the very action in question has [not] previously been
> held unlawful. But in excessive-force cases, it can be difficult for
> officers to know how previous judicial opinions apply to new,
> tense situations. The reasonableness of force often hinges on the
> details of an individual case, making the specificity of caselaw
> especially important. In such cases, officers are entitled to
> qualified immunity unless existing precedent squarely governs the
> specific facts at issue. The caselaw does not have to be "directly
> on point," but existing precedent must have placed the question of
> unlawfulness beyond debate. Cases with closely analogous facts
> can thus help move a case beyond the otherwise hazy border
> between excessive and acceptable force and thereby provide an
> officer notice that a specific use of force is unlawful.

*Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 196 (3d Cir. 2021). Here, as demonstrated by the

video recording, Beganics' use of the OC spray was "nowhere near the 'hazy border between

excessive and acceptable force." *Id.* (citations omitted). "[O]fficers may not expose inmates to

gratuitous force divorced from any legitimate penological purpose." *Id. See also Hope v.*

*Pelzer*, 536 U.S. 730, 741 (2022); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

Prior to Beganics' actions, a robust consensus of persuasive precedent existed to place

him on notice that deploying OC spray on a physically contained inmate who was complying

with instructions and posing no threat to the officer was unlawful. *See Treats v. Morgan,* 308

F.3d 868, 872–73 (8th Cir.2002) (pepper spray will not be justified each time inmate questions

orders or seeks redress for officer's actions; basis for Eighth Amendment claim exists when

pepper spray is used without warning on inmate who may have questioned officer's actions but

otherwise posed no threat); *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008) (vacating

summary judgment for officer who, without warning, used pepper spray against inmate who was

in his cell and who was disruptive and had refused three orders to surrender his cellmate's tray

but otherwise presented no threat to officer); *Foulk v. Charrier*, 262 F.3d 687, 701–02 (8th

Cir.2001) (agreeing that reasonable jury could have found in plaintiff's favor where inmate

testified he was being compliant and door was locked when defendant enticed him to put his face

up to screened window and sprayed pepper spray directly into inmate's face; inmate testified his

eyes, nose, and mouth burned, and while defendant testified discomfort was only temporary,

plaintiff testified he felt pain for several days); *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947,

955 (11th Cir. 2019) ("It was more than ten years ago now that this Court held, in no uncertain

terms, that "[w]hen jailers continue to use substantial force against a prisoner who has clearly

stopped resisting—whether because he has decided to become compliant, he has been subdued,

or he is otherwise incapacitated—that use of force is excessive."); *Vinyard v. Wilson*, 311 F.3d

1340 (11th Cir. 2002) (holding that an officer had used excessive force when he pepper-sprayed

a secured suspect in the face as she sat shackled in the backseat of his cruiser); *Iko v. Shreve*, 535

F.3d 225, 239 (4th Cir. 2008) (deploying bursts of pepper spray on suspect after he began to

comply with officer's directions was excessive); *Dean v. Jones*, 984 F.3d 295, 304 (4th Cir.

14

2021) (recognizing line of cases holding that "when officers do use force – including pepper spray – against a formerly recalcitrant inmate after he has been subdued, then a reasonable jury may infer that the force was applied not for protective reasons but instead to retaliate or punish."); *Young v. Kent Cnty. Sheriff's Dep't,* 2022 WL 94990, at *9 (6th Cir. Jan. 10, 2022) (discussing long history of cases holding that use of pepper spray against confined or restrained and compliant individual is unreasonable and excessive). *See also Jacobs*, 8 F.4th at 197 (citing *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); *Estate of Davis v. Delo*, 115 F.3d 1388, 1394–95 (8th Cir. 1997) ("We agree that the law was well established that striking an unresisting inmate ... in the head while four other officers were restraining his limbs ... is a violation of the Eighth Amendment."); *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) ("By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated."); *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) ("We have little difficulty concluding that in 2009, the time of the incident, it was well-established, in sufficiently similar situations, that officers may not 'use gratuitous force against a prisoner who has already been subdued ... [or] incapacitated.' " (alteration in original) (quoting *Skrtich*, 280 F.3d at 1303)).[8]

---

[8] The Court recognizes that many of the foregoing cases involved excessive force claims under the Eighth Amendment, rather than the Fourteenth Amendment. Eighth Amendment claims are subject to a more demanding malicious-and-sadistic standard. *Kingsley*, 576 U.S. at 400. Thus, these cases are equally, if not more, instructive where the plaintiff is a pretrial detainee. "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Id.* (quoting *Graham*, 490 U.S. at 398 n.11). Thus, when Beganics used OC spray on Sledge, it was clear that the Fourteenth Amendment protected pretrial detainees from excessive force amounting to punishment. *See Graham*, 490 U.S. at 395 n.10. Therefore, even if Beganics "could mistakenly believe that the circumstances here were governed by the Eighth Amendment standard (as many jail interactions are) it would not change the outcome because the conduct would violate clearly established law under either standard." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 197 (3d Cir. 2021).

Moreover, "[i]t is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.'" *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)); *see also Robinson v. Danberg*, 673 Fed. Appx 205, 212 (3d Cir. 2016) (finding sufficient evidence for a reasonable factfinder to conclude that officer's use of mace on an inmate in his cell amounted to an excessive use of force).

Based on the allegations of the Amended Complaint and the video evidence, a reasonable factfinder could find that Sledge was obeying Beganics' orders to disrobe and posing no threat to prison safety or security when Beganics discharged OC spray into his face. Any reasonable officer would have known that the use of this level of force under such circumstances was unlawful. *See, e.g., Green v. Poorman*, 2022 WL 608965, at 6 (D. Del. Feb. 17, 2022) (denying qualified immunity for gratuitous use of pepper spray). Therefore, Beganics is not entitled to qualified immunity based on the current record, and Defendants' motion to dismiss Sledge's excessive force claim against Beganics will be denied.[9]

### b.  Tarasovich's Use of Force

Sledge maintains that after being attacked by another inmate, he was proceeding to his knees when Tarasovich threw him "backwards onto his chest," injuring Sledge's right arm. ECF No. 29, ¶ 8. The Defendants have submitted video of this incident, which includes six recordings of the incident taken from different camera angles. ECF No. 25 ("Exhibit H"). None

---

[9] Qualified immunity is a fact-specific inquiry and Courts have noted that it should not be conclusively resolved at the motion to dismiss stage. *See, e.g., Redclift v. Schuylkill County*, 2022 WL 3951356, at *11 (M.D. Pa. Aug. 31, 2022). Upon a more developed record, Beganics may renew his assertion of qualified immunity through a motion for summary judgment or other appropriate motion.

supports a finding that Tarasovich acted in an objectively unreasonable manner in response to the circumstances he confronted.  Of the six video files reviewed by the Court, the file identified as "F Pod Pole F" presents the clearest view of the actions Sledge contends amounted to excessive force.  This video file shows Sledge entering the unit.  *Id.*, at 18:12:01.[10]  Sledge passes by the corrections officers' desk and appears to check in.  *Id.*, at 18:12:08.  As Sledge walks a few steps further, he is attacked by another inmate who appears to have been waiting for him.  *Id.*, at 18:12:12.  Sledge falls to the ground while the other inmate continues his attack.  *Id.*, at 18:12:17.  Sledge, who at this point had gotten to his feet, falls to the ground again.  *Id.*, at 18:12:33.  Both Sledge and his attacker then retreat to opposite corners, with Sledge standing near the desk area at the unit's entrance door.  *Id.*, at 18:12:46.  A group of corrections officers then enter the unit; Sledge is approached from behind and taken to the floor in a continuous movement.  *Id.*, at 18:12:47-49.  Sledge's legs and feet are seen to be thrashing as the officers continue their attempt to subdue him.  *Id.*, at 18:12:53.  Sledge is then escorted from the unit by corrections officers.  *Id.*, at 18:13:20.

As a pretrial detainee, Sledge must show that "law enforcement had an express intent to punish [him] and must not have had an 'alternative purpose' for the force or restriction, or that the force or restriction was excessive in relation to the alternative purpose assigned[.]"  *Gbotoe v. Lancaster County, PA*, 2021 WL 3662402, at *3 (E.D. Pa. Aug. 18, 2021) (citing *Bell*, 441 U.S. at 538) (other citations omitted).  The "objective reasonableness" of the defendant's actions is the touchstone.  *See Jacobs*, 8 F.4th at 194.  The video demonstrates that the actions Sledge complains of were a constitutionally permissible use of force.  *See Hudson*, 503 U.S. at 6-7. Tarasovich and the other officers were responding to the altercation between Sledge and the

---

[10] Here again, the Court cites to the time index on the video itself; not that of the playback program.

other inmate.  The altercation presented a serious danger to the inmates involved and bystanders

and had the potential to escalate.  Tarasovich's actions represented an objectively reasonable

means to deescalate and contain the volatile situation.  They also served to protect Sledge and the

other inmate from each other.  Nothing in the video supports an inference that Tarasovich acted

unreasonably or to punish Sledge.  Rather, the video allows only one reasonable inference—that

Tarasovich acted for the "alternative purpose" of stopping the inmate altercation, securing and

subduing Sledge, and restoring order and discipline.  *See Gbotoe*, 2021 WL 3662402, at *3

(citing *Hudson*, 503 U.S. at 6-7; *Bell*, 441 U.S. at 538).  Presented with similar circumstances,

this Court noted that the "ongoing fight placed both [inmates] at risk of serious injury.  If

allowed to continue, the altercation also could have spread to other inmates and detainees who

were present in the day room." *Robison v. Testa*, 2021 WL 5770211, at *3 (W.D. Pa. Dec. 6,

2021).  Circumstances required Tarasovich to make a "split-second decision" as to the amount of

force necessary to subdue Sledge, end the altercation, and restore order.  *See id.*  The force he

chose to use was objectively reasonable under the circumstances.  Accordingly, Defendants'

motion to dismiss Sledge's excessive force claim against Tarasovich will be granted.

ii.  The Amended Complaint fails to state a claim against Martin.

Sledge claims that prison counselor Heather Martin denied him the form he needed to file

a grievance concerning the use of force incident on April 7, 2020, and that she thereby violated

his First Amendment rights.  ECF No. 29, ¶ 9.  This claim fails as a matter of law.

As courts have repeatedly recognized, because prisoners have "no right to a grievance

process," they have no "independent claim based on the handling of a grievance." *Pumba v.

Lehigh County Jail Administration*, 2022 WL 1443679, at *10 (E.D. Pa. May 6, 2022) (citing

*Woods v. First Corr. Med. Inc.*, 446 Fed. Appx 400, 403 (3d Cir. 1991)) (holding that a "prisoner

has no free-standing constitutional right to an effective grievance process). Sledge claims that

Martin's refusal to provide him with a grievance form prevented him from exhausting his

administrative remedies. ECF No. 29, ¶ 9. While Martin's alleged actions may have rendered

Sledge's grievance remedy unavailable and thereby excused him from exhausting that remedy, it

did not give rise to a claim or remedy against Martin. Accordingly, Sledge's claim against

Martin will be dismissed.[11]

IV.     Sledge's Motion for Summary Judgment against Beganics

Although styled as a motion for summary judgment against Beganics, Sledge's motion

relies sole on the same video of the January 4, 2020, incident that the Court considered in

connection with Defendants' motion to dismiss. Federal Rule of Civil Procedure 56(a) requires

the court to enter summary judgment "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Under this standard "the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*.,

477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or

nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at

248; *Gray v. York Newspapers, Inc*., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material

fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the

---

[11] To the extent Sledge may have intended to assert a First Amendment retaliation claim against Martin, it also fails. "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Here, the facts alleged in the Amended Complaint provide no support for the first and third elements of the claim. Accordingly, to the extent the Amended Complaint can be construed as asserting a retaliation claim against Martin, it will be dismissed.

nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn from it in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

As discussed above, the Court has concluded that the video recording of Beganics' on January 4, 2020 supports a viable excessive force claim under the Fourteenth Amendment. A jury could reasonably find that Beganics had "no penological need" to resort to OC spray and that the force he used was gratuitous and objectively unreasonable. The record is not so clear, however, that the Court may hold that Beganics' use of force was excessive as a matter of law. At the motion to dismiss stage, the Court views the allegations of the Amended Complaint in the light most favorable to Sledge except to the extent his allegations are directly contradicted by the video. More importantly, at this procedural stage, the Court must draw all reasonable inferences in favor of Sledge. At trial, Sledge will bear the burden of providing each element of his claim against Beganics by a preponderance of the evidence. Thus, at this stage, genuine issues of material fact remain for later development and consideration. Furthermore, discovery may yield

additional facts concerning the circumstances surrounding Beganics' use of force that are relevant to Sledge's claim or to the Court's consideration of any renewed assertion of qualified immunity Beganics may present. Accordingly, the Court will deny Sledge's motion for summary judgment.

V.    Conclusion

For the reasons discussed above, Plaintiff's motion for summary judgment [ECF No. 44] will be denied, and Defendants' motion to dismiss will be granted in part and denied in part, as follows:

A.    The motion to dismiss Plaintiff's excessive force claim against Defendant Beganics will be DENIED;

B.    The motion to dismiss Plaintiff's excessive force claim against Defendant Tarasovich will be GRANTED. The claim against Tarasovich will be dismissed with prejudice as any attempt at further amendment would be futile, particularly in light of the uncontroverted video evidence; and

C.    The motion to dismiss Plaintiff's claim against Defendant Martin relating to her refusal to provide Sledge with a grievance form will be GRANTED. The claims against Martin will be dismissed will be dismissed with prejudice as any attempt at further amendment would be futile.

A separate Order will follow.

Entered this 2nd day of March, 2023.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE